UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on September 30, 2004

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. |
| | ) | |
| v. | ) | Grand Jury Original |
| | ) | |
| RAYFRAN DAS NEVES SALES, | ) | Violations: |
| and | ) | 18 U.S.C. § 2332(b)(2) |
| CLODOALDO CARLOS BATISTA, | ) | (Conspiracy to Murder a United States |
| also known as EDUARDO, | ) | National Outside the United States) |
| | ) | |
| | ) | 18 U.S.C. § 2332(a)(1) |
| Defendants. | ) | (Murder of a United States National |
| | ) | Outside the United States) |
| | ) | |
| | ) | 18 U.S.C. §§ 924(c) and (j) |
| | ) | (Using and Carrying a Firearm During a |
| | ) | Crime of Violence Causing Death) |
| | ) | |
| | ) | 18 U.S.C. § 2 |
| | ) | (Aiding and Abetting and Causing an |
| | ) | Act to be Done) |

**I N D I C T M E N T**

   The Grand Jury Charges that:

<u>COUNT ONE</u>

   At all times material to this Indictment, except as otherwise indicated:

A. <u>Introduction</u>

   1. Dorothy Mae Stang ("Sister Stang") was a Catholic nun, a member of the Sisters of Notre Dame. She was a citizen of the United States who lived and worked in Brazil.

   2. Defendant **RAYFRAN DAS NEVES SALES** (hereinafter referred to as "**SALES**") and defendant **CLODOALDO CARLOS BATISTA, also known as EDUARDO** (hereinafter referred

to as "**BATISTA**") were employees of conspirator A, a land holder, and supervised by conspirator B, both of whose identities are known to the Grand Jury.

3. All of the acts referred to in this Indictment were committed in the Federative Republic of Brazil, that is, outside of the jurisdiction of any particular state or district of the United States, but within the extraterritorial jurisdiction of the United States and, therefore, pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia.

B. The Offense

4. From on or about February 11, 2005, to on or about February 24, 2005, within the Federative Republic of Brazil, defendants **SALES, BATISTA** and others, known and unknown to the Grand Jury knowingly conspired deliberately, maliciously, and with premeditation and malice aforethought, to commit the murder, as defined by Title 18, United States Code, Section 1111(a), of Dorothy Mae Stang, a national of the United States, while such national was outside the United States.

C. Objects of the Conpiracy

5. The objects of the conspiracy were to murder Sister Stang because of her activism in Brazilian land use politics; to avoid arrest for the murder; and to protect members of the conspiracy from identification and arrest.

D . Manner and Means to Accomplish the Objects of the Conspiracy

6. Members of the conspiracy discussed and planned the murder of Sister Stang.

7. Members of the conspiracy discussed payments to be made to the conspirators who killed Sister Stang.

8. Members of the conspiracy looked for and eventually found Sister Stang for the purpose of killing her.

9. Members of the conspiracy shot and killed Sister Stang.

10. Members of the conspiracy hid in the jungle after the shooting to avoid arrest.

11. Members of the conspiracy met to discuss evading arrest, arrangements that could be made to assist the conspirators who shot Sister Stang flee and payments that could be made to them to insure they would protect the identity of other members of the conspiracy.

12. Members of the conspiracy promised to assist the conspirators who shot Sister Stang by hiring attorneys for them and getting them out of jail, in exchange for their not identifying to law enforcement authorities the other members of the conspiracy.

E. Overt Acts

13. In furtherance of the conspiracy and to accomplish its objects, members of the conspiracy, either alone or in various combination, committed the following overt acts, among others:

(a) On or about February 11, 2005, in the evening, conspirator B offered to pay money, the equivalent of about $20,000, if defendant **SALES** killed Sister Stang.

(b) On or about February 11, 2005, in the evening, conspirator B told defendant **SALES** to get defendant **BATISTA** to help him kill Sister Stang.

(c) On or about February 11, 2005, in the evening, defendant **SALES** agreed to murder Sister Stang in exchange for money.

(d) On or about February 11, 2005, later in the evening, defendant **SALES** told defendant **BATISTA** that conspirator B had offered to pay them the equivalent of about $20,000 for killing Sister Stang and sent him to **BATISTA** for help.

(e) On or about February 11, 2005, during the night, defendants **SALES** and **BATISTA** set out to find Sister Stang for the purpose of killing her by going to the last location **SALES** and conspirator B had seen her earlier that day.

(f) On or about February 11, 2005, during the night, defendant **SALES** approached the hut where he and conspirator B had seen Sister Stang, looked for her, did not see her and reported his findings to defendant **BATISTA**.

(g) On or about February 12, 2005, in the morning, conspirator B learned that **SALES** and **BATISTA** had not killed Sister Stang and in a meeting with them, insisted that the plan to kill her should go forward and must not fail.

(h) On or about February 12, 2005, in the morning, defendants **SALES** and **BATISTA** approached Sister Stang on a dirt road and shot her at least three times, killing her.

(i) On or about February 12, 2005, defendants **SALES** and **BATISTA** fled from the scene of the murder and hid from law enforcement authorities on land held by conspirator A.

(j) On or about February 12, 2005, defendant **SALES** hid the gun used to murder Sister Stang on land held by conspirator A.

(k) On or about February 13, 2005, in the morning, at a meeting on land held by conspirator A, conspirator B told defendants **SALES** and **BATISTA** that he would get money from conspirator A to enable them to flee from the area.

(l) On or about February 13, 2005, after conspirator A and another conspirator whose identity is not known to the Grand Jury joined the above-referenced meeting, conspirator A: asked defendants **SALES** and **BATISTA** where they had hidden the gun used to kill Sister Stang; offered defendants

money to flee from the area of the murder; told defendants he was arranging air transportation from the area for them, to be provided by another conspirator, who was not present and whose identity is not known to the Grand Jury; and promised to hire attorneys for defendants and secure their release in exchange for their not disclosing to authorities the involvement of the other conspirators.

(m) From on or about February 12, 2005, through on or about February 21, 2005, defendants **SALES** and **BATISTA** hid in the jungle to avoid arrest.

(n) On or about February 24, 2005, after all of their arrests, conspirator B told defendants **SALES** and **BATISTA** to deny everything and he would help get them released.

(**Conspiracy to Murder a United States National Outside the United States**, in violation of Title 18, United States Code, Sections 2332(b)(2))

## COUNT TWO

1. Paragraphs 1 through 3 of Count One of this Indictment are hereby incorporated by reference as if fully realleged and restated herein.

2. On or about February 12, 2005, within the Federative Republic of Brazil, defendants **SALES**, **BATISTA** and others, known and unknown to the Grand Jury, deliberately, maliciously, and with premeditation and malice aforethought, did commit murder, as defined by Title 18, United States Code, Section 1111(a), by killing Dorothy Mae Stang, a national of the United States, while such national was outside the United States.

(**Murder of a United States National Outside the United States and Aiding and Abetting and Causing an Act to be Done**, in violation of Title 18, United States Code, Sections 2332(a)(1) and 2)

5

COUNT THREE

1. Paragraphs 1 through 3 of Count One of this Indictment are hereby incorporated by reference as if fully realleged and restated herein.

2. On or about February 12, 2005, within the Federative Republic of Brazil, defendants **SALES, BATISTA** and others, known and unknown to the Grand Jury, knowingly used, carried, brandished and discharged a firearm, that is, a .38 caliber Taurus revolver, during and in relation to a crime of violence for which each of them may be prosecuted in a court of the United States, that is, conspiracy to murder a United States national outside the United States, as set forth in Count One of this Indictment, and murder of a United States national outside the United States, as set forth in Count Two of this Indictment.

3. In the course of this offense, defendants **SALES** and **BATISTA** caused the death of Dorothy Mae Stang through the use of a firearm and the killing was murder, as defined by Title 18, United States Code, Section 1111(a).

(**Using a Firearm During a Crime of Violence Causing Death and Aiding and Abetting and Causing an Act to be Done**, in violation of Title 18, United States Code, Sections 924(c), 924(j)(1) and 2)

**Notice of Special Findings**

a. The allegations of Counts One, Two and Three of this Indictment are hereby realleged as if fully set forth herein and incorporated by reference.

b. Defendant **SALES** was not less than 18 years of age at the time of the offense (Title 18, United States Code, Section 3591 (a));

c. Defendant **SALES** intentionally killed the victim (Title 18, United States Code, Section 3591(a)(2)(A));

  d. Defendant **SALES** intentionally inflicted serious bodily injury that resulted in the death of the victim (Title 18, United States Code, Section 3591(a)(2)(B));

  e. Defendant **SALES** intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in this offense, and the victim died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(C));

  f. Defendant **SALES** intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(D));

  g. Defendant **SALES** committed the offenses described in Counts One, Two and Three, and in committing those offenses, knowingly created a grave risk of death to one or more persons in addition to the victim of the offenses (Title 18, United States Code, Section 3592(c)(5));

  h. Defendant **SALES** committed the offenses described in Counts One, Two and Three after substantial planning and premeditation to cause the death of a person and commit an act of terrorism (Title 18, United States Code, Section 3592(c)(9));

  i. Defendant **BATISTA** was not less than 18 years of age at the time of the offense (Title 18, United States Code, Section 3591 (a));

  j. Defendant **BATISTA** intentionally killed the victim (Title 18, United States Code, Section 3591(a)(2)(A));

  k. Defendant **BATISTA** intentionally inflicted serious bodily injury that resulted in the death of the victim (Title 18, United States Code, Section 3591(a)(2)(B));

l.      Defendant **BATISTA** intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in this offense, and the victim died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(C));

m.     Defendant **BATISTA** intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(D));

n.      Defendant **BATISTA** committed the offenses described in Counts One, Two and Three, and in committing those offenses, knowingly created a grave risk of death to one or more persons in addition to the victim of the offenses (Title 18, United States Code, Section 3592(c)(5)); and

o.      Defendant **BATISTA** committed the offenses described in Counts One, Two and Three after substantial planning and premeditation to cause the death of a person and commit an act of terrorism (Title 18, United States Code, Section 3592(c)(9)).

(Pursuant to Title 18, United States Code, Sections 3591 and 3592).

A TRUE BILL

FOREPERSON

Attorney of the United States in
and for the District of Columbia